**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-05022-01-CR-SW-RED |
| ) | |
| DANIEL K. NODINE, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

NOW before the Court is the Report and Recommendation of the United States Magistrate (Doc. 29) on Defendant's Motion to Suppress (Doc. 15) and Defendant's Supplemental Motion to Suppress Evidence and Request for *Franks* Hearing (Doc. 17). The United States Magistrate, Judge James C. England, held a formal hearing on Defendant's Motions and then recommended that the Motions be denied. Defendant has filed Exceptions to the Report and Recommendation (Doc. 32) and requests an evidentiary hearing pursuant to Rule 74.1, or in the alternative oral argument in conjunction with his Report and Recommendation.

On motions to suppress, the Court reviews the magistrate's report and recommendation *de novo* and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. 28 U.S.C. § 636(b). The Court's review must include *de novo* review of the magistrate's findings of fact, including any credibility determinations. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003).

A clerk at the Gas-N-Grub convenience store ("the store") in Purdy, Missouri called the Barry County Sheriff's Department to report possible narcotics found at the store. Deputy Angela Cole called Detective Adam Crouch, a narcotics investigator for Barry County. Crouch then went

to the store and spoke with the clerk, Barbra Gardner. The alleged narcotics were packaged in six smaller bags contained inside a larger bag. These narcotics were found near the counter of the store, but no one had seen who dropped them.

Crouch asked if the store had surveillance equipment, and was told that there was video surveillance of the store. Crouch then contacted the owner of the store, Troy Collins, who met with Crouch and viewed the tape long enough to get a time frame and then Crouch took the tape into custody. Crouch finished viewing the tape at the Cassville Police Department. Crouch viewed the tape from the time Teddy McIntire, the clerk who found the narcotics, was visible back until the narcotics were not visible. Crouch identified the Defendant as the person who was at the counter before the narcotics were visible, and then the narcotics were visible after he left. Crouch could also see Defendant reach into his pocket before the drugs appeared. Crouch knew Defendant prior to this investigation.

Crouch then took the tape back to the store and played it for Troy Collins, Barbra Gardner, and Teddy McIntire. Each person identified the Defendant on their own, with no help from the officer. They explained that Defendant was a regular customer and was readily recognizable.

Crouch then applied for a search warrant. Crouch did not verify Defendant's current address, rather he relied on the address known from a prior investigation. He did drive by the residence to establish that Defendant's vehicle was located there. In the affidavit for the search warrant, Crouch included general opinions regarding residences containing controlled substances, but he did not give any specific facts that Defendant's residence was likely or was known to contain paraphernalia, packaging materials, chemicals, or precursors.

Defendant argues in the Motions to suppress that the search warrant lacked probable cause, and the good faith exception does not apply because the warrant was not issued by a neutral,

2

detached magistrate. Defendant also alleges two Franks violations (1) that the overall poor quality and resolution of the surveillance tapes rendered it impossible to support Crouch's statements in the affidavit, and (2) the subject depicted in the video is viewed predominantly from behind, and due to the poor quality of the depiction, the statements that the subject was positively identified by the clerk and the owner is not believable.

*Validity of the Search Warrant*

In the issuance of a search warrant, the Fourth Amendment dictates that an impartial, neutral and detached Judicial Officer will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband. *Warden v. Hayden,* 387 U.S. 294 (1967); *United States v. Johnson,* 64 F.3d 1120, 1126 (8th Cir.1995). In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular, designated place. *United States v. Gladney,* 48 F.3d 309, 313 (8th Cir.1995); *United States v. Tagbering*, 985 F.2d 946, 949 (8th Cir.1993). Probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983).

The application and affidavits which support a request for a Search Warrant "should be examined under a common sense approach and not in a hypertechnical fashion." *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993). In addition, the Court should review the affidavits as a whole, and not on a paragraph-by-paragraph basis. *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir.1991); *United States v. Townsley,* 843 F.2d 1070, 1076-77 (8th Cir.1988), cert. dismissed, 499 U.S. 944 (1991). In so doing, the reviewing Court must not engage in a *de novo* review but,

3

rather, should accord great deference to the decision of the Judicial Officer who issued the warrant. *United Sates v. Maxim,* 55 F.3d 394, 397 (8th Cir.1995), cert. denied, 516 U.S. 903 (1995); *United States v. Curry,* 911 F.2d 72, 75 (8th Cir.1990), cert. denied, 498 U.S. 1094 (1991). This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to warrants. *Gates*, 462 U.S. at 236.

At the hearing, there was evidence presented by three witnesses that they could readily identify the Defendant on the video without any assistance from Crouch. Crouch also testified he was able to identify the Defendant due to a prior investigation. According to the affidavit by Crouch, the officer who had applied for the warrant and who had considerable experience in the investigation of drug offenses, the narcotics found at the store were packaged for distribution, it is common for such drug distributors to store the evidence of their offenses in their personal residences, and also common for the distributors to be users of controlled substances and have drug related paraphernalia in the residence. Since the narcotics were not in the video surveillance before the Defendant approached the counter, but were visible afterwards and no one else approached the counter from the time the Defendant was there until the store clerk retrieved the narcotics, the inference was forceful that Defendant had dropped the narcotics in the store. When that reasonable inference is coupled with the opinion of an experienced law enforcement officer "that people who distribute methamphetamine commonly keep large quantities of the controlled substance in there (sic) residence along with scales and packing material," a substantial basis for finding probable cause to search Defendant's residence, was provided to the Court from which the warrant issued. *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir.1994); *see also*, *United States v. Hulett,* 22 F.3d 779, 780-81 (8th Cir.1994) ("Few places are more convenient tha[n] one's residence for use in

4

planning criminal activity and concealing fruits of a crime."), cert. denied, 513 U.S. 882 (1994); *United States v. Benevento*, 836 F.2d 60, 70-71 (2nd Cir. 1987) (holding that the opinion of the experienced officer as to the likelihood of items being found at the residence was an "important factor").

Moreover, the Court finds that even if the affidavit was insufficient, based upon *United States v. Leon*, 468 U.S. 897, 922-23 (1984) and its progeny, the good faith exception would apply. The good faith exception requires the Court to examine the totality of the circumstances. The Court can review what the officer knew but did not include in his affidavit. *United States v. Chambers*, 987 F.2d 1331, 1335 (8th Cir. 1993). Reviewing the testimony of Crouch along with the affidavit in support of the warrant, the Court finds there was a good faith belief that the warrant was valid. Therefore, Defendant's Motion to Suppress is due to be denied.

## Franks *Violations*

Defendant claims that in accordance with *Franks v. Delaware*, 438 U.S. 154 (1978), the affidavit by Crouch in support of the search warrant violates the Fourth Amendment because it contained false statements of facts made intentionally or recklessly. *Franks* entitles the Defendant to an evidentiary hearing about the veracity of a search warrant affidavit if the Defendant can make a substantial preliminary showing that the affiant intentionally or recklessly included a false statement in the affidavit. *United States v. Hull*, WL 1993916 (8th Cir, Aug, 19, 2005); *see also United States v. Mathison*, 157 F.3d 541, 547-48 (8th Cir. 1998).

The Defendant claims two *Franks* violations. Defendant claims that the poor quality and resolution of the tapes renders it impossible to support Crouch's statements in the affidavit that the narcotics appeared shortly after the person later identified as the Defendant approached the counter. Second, the quality of the video also calls into question the statements that the clerks and owner of

5

the store identified Defendant.

However, at the hearing Gardner, Collins, and Crouch all testified clearly and affirmatively that they identified Defendant from the video without any help. There was a proffer that McIntire's testimony would be the same. Upon review of the testimony given, there is no "substantial preliminary showing" made in the record to support a *Franks* hearing on this matter. The witnesses confirm the statements made in Crouch's affidavit – clearly they were not recklessly or falsely made. All of the witnesses agreed that the tape was "clear" and that they could identify the Defendant from the tape. All of the witnesses appeared certain that they had correctly identified Defendant as the person on the tape. Thus, Defendant's supplemental motion to suppress evidence, request for an evidentiary hearing and request for oral argument are due to be denied.

*Conclusion*

It is hereby **ORDERED** that the Court **ADOPTS** the Report and Recommendation of the United States Magistrate (Doc. 29) in full, and **DENIES** the Motion to Suppress (Doc. 15), and **DENIES** the Supplemental Motion to Suppress Evidence and Request for *Franks* Hearing (Doc. 17). It is **FURTHER ORDERED** that the Exceptions to the Report and Recommendation, Request for Evidentiary Hearing Pursuant to Local Rule 74.1, or in the Alternative, Request for Oral Argument (Doc. 32) is hereby **OVERRULED**, with the Request for Evidentiary Hearing or Oral Argument **DENIED.**

**IT IS SO ORDERED.**

DATE:      November 21, 2005         */s/ Richard E. Dorr*
                                      RICHARD E. DORR, JUDGE
                                      UNITED STATES DISTRICT COURT